## POTTER v. UNITED STATES NAT. BANK et al.

(Supreme Court, General Term, First Department.    February 17, 1893.)

PLEADING—BILL OF PARTICULARS.

   In an action for an accounting and for damages the complaint alleged that plaintiff's assignors, D. & Co., were Wall street brokers, and owned over $3,000,000 of the bonds and stock of the B. Telegraph Co.; that thereafter D. & Co. obtained a loan of $50,000 from defendant bank, to secure which a large block of said company's stock was pledged, together with other stocks and securities of the fair market value of $63,000; that defendant bank and the other defendants thereupon conspired together to call plaintiff's loan, and made a forced and public sale of the securities pledged, thereby causing the stocks and bonds to be sacrificed, and the market value of the stocks and bonds of the B. Telegraph Co. to be impaired, thus destroying the credit and business of D. & Co., and also of the B. Telegraph Co., causing a total loss of the entire capital stock and bonds of said company, amounting to $3,800,-000; and asked for judgment for the difference between the loan and the value of the securities pledged therefor, and also for $4,000,000 damages, caused by the depreciation of the stock and bonds of the B. Telegraph Co. *Held*, that defendants were entitled to a bill of particulars showing the alleged market value at the time of the sale of each of the securities sold, and showing the nature and facts of the alleged conspiracy, and how the sale of the pledged securities caused a loss to plaintiff of $4,000,000.

Appeal from special term, New York county.

Action by Henry M. Potter, as assignee of Anthony W. Dimock, against the United States National Bank, Logan C. Murray, Evan G. Sherman, and John J. McCook. Defendant Murray moved for a "bill of particulars, showing the alleged market value of each of the securities sold by the United States National Bank at the time they were sold, and showing the nature and facts of the alleged collusion and conspiracy between me and the other defendants, and how such sale by the said bank of securities of the par value of $65,000 caused the alleged loss and damage of $4,000,000 to the plaintiff's assignors." From an order granting such motion, plaintiff appeals. Affirmed.

The complaint referred to in the opinion, omitting the formal parts, was as follows:

"That on and before the 15th day of May, A. D. 1884, Anthony W. Dimock and Arthur V. Dimock were copartners doing business as bankers and brokers at No. 2 Wall street, in the city of New York, under the firm name of A. W. Dimock & Co. That at the time aforesaid the said Anthony W. Dimock was the president, and said firm of A. W. Dimock & Co. was the principal stockholder, of the Bankers' & Merchants' Telegraph Company, a corporation created and existing under the law of the state of New York, having a capital stock of three million dollars, with auxiliary companies in the states of Massachusetts, Rhode Island, Connecticut, New Jersey, Pennsylvania, Maryland, Ohio, Indiana, and Michigan, and also in the District of Columbia, and elsewhere. That said Bankers' & Merchants' Telegraph Company had prior to said date expended in constructing its line of telegraph, in purchasing franchises and leases, in obtaining contracts, and in maintaining and improving its lines of telegraph, over four millions of dollars, and had built up an extensive and prosperous telegraph business throughout the territory mentioned, and had become a powerful rival and competitor of the other telegraph companies of the country. That the said A. W. Dimock & Co. had invested in the stock and bonds of said Bankers' & Merchants' Telegraph Company over three millions of dollars, and on said 15th day of May, A. D. 1884, were the owners and holders of twenty-two thousand and thirty shares of said capital stock, of the par value of one hundred dollars per share, and of nine hundred and seventy of the bonds of said company of the denomination of one thousand dollars each; on which day the market price of said stock was about one hundred and nineteen dollars per share, and the market price of said bonds about eight

hundred dollars each. That, owing to the relation between said Anthony W. Dimock and said firm of A. W. Dimock & Co. and said Bankers' & Merchants' Telegraph Company, any serious impairment of the financial condition and credit of said firm or of said A. W. Dimock, individually would almost necessarily correspondingly affect the credit and condition of said Bankers' & Merchants' Telegraph Company. That on and immediately prior to said 15th day of May, A. D. 1884, there existed a feverish and excited state of the market for stock, bonds, and other securities in the city of New York, and of the public mind in regard to business men, corporations, and enterprises, by reason of which any circumstance calculated in any manner to affect injuriously the standing and credit of any person, firm, or corporation was peculiarly likely and almost certain to have a disastrous effect upon such person or corporation. That on the 15th day of April, 1884, said firm of A. W. Dimock & Co. had, in the ordinary course of its business, obtained from the defendant the United States National Bank a loan of fifty thousand dollars, which, by its terms, fell due August 18, 1884, to secure which it had originally pledged to said bank two hundred shares of the stock of said Bankers' & Merchants' Telegraph Company, two hundred shares of the stock of the Delaware, Lackawanna & Western Railroad Company, two hundred shares of the stock of the Missouri Pacific Railroad Company, and fifteen thousand dollars of Central Iowa Railroad Company, Illinois Division, first mortgage bonds; but afterwards, and before said 15th day of May, A. D. 1884, had, with the consent of said bank, substituted in place of said two hundred shares of Missouri Pacific Railroad stock twenty thousand dollars of the first mortgage bonds of the Ohio Southern Railroad Company, so that on said last-mentioned date said bank held as security as aforesaid all of said securities originally pledged except said Missouri Pacific Railroad stock, together with said Ohio Southern Railroad Company's bonds, the market price and value of which stock and bonds so held was such on said last-mentioned day that they constituted and were ample security for said loan of fifty thousand dollars, and there was no ground or warrant whatever for the call or termination of said loan, or the appropriation or sale by said bank, of said stocks or bonds, or any of them, pledged to said bank as aforesaid. That all the facts and circumstances hereinbefore stated and set forth were well known to all of the said defendants, the said United States National Bank, Logan C. Murray, Evan C. Sherman, and John J. McCook, on and before said 15th day of May, A. D. 1884. That nevertheless the said defendants, the United States National Bank, Logan C. Murray, Evan G. Sherman, and John J. McCook, on or about said last-mentioned date, well knowing all the facts aforesaid, and especially well knowing the probable effect of a forced and public sale of said stocks and bonds so pledged as security for said loan upon the credit, standing, and business of said firm of A. W. Dimock & Co., and of said Bankers' & Merchants' Telegraph Company, and with the intent and for the purpose of impairing and destroying the credit, standing, and business of said firm, and of impairing the market value of the stock and bonds of said Bankers' & Merchants' Telegraph Company, of embarrassing its business operations, and of causing its final destruction, maliciously and illegally agreed, colluded, and combined with each other and with certain other persons whose names the plaintiff cannot at present ascertain to cause, under pretext of an unwarranted call and demand of payment of said loan of fifty thousand dollars by said bank, the public sale and sacrifice of said stocks and bonds so held by said bank, the depreciation of the market value of the same and of the stock and bonds of said Bankers' & Merchants' Telegraph Company, the embarrassment of its operation, and final destruction and the financial ruin of said firm of A. W. Dimock & Co. That in fact, in pursuance of said malicious and illegal agreement and combination, the said bank did on or about said last-mentioned date call and demand payment of said loan of fifty thousand dollars, and threatened to sell said stock and bonds of said firm, and did, under the false, unfounded, and fraudulent pretext aforesaid, cause said stocks and bonds to be publicly sold at auction, thereby causing said stocks and bonds to be sacrificed for less than their fair value, and impairing the market value of the stocks and bonds of said Bankers' & Merchants' Telegraph Company. That the effect of said wrongful, illegal, and fraudulent acts of said defendants has, in fact, been not only to cause loss and damage to said firm of A. W. Dimock & Co., by the sacrifice of said stocks and bonds so pledged as security for said loan, but to impair and finally destroy its credit and business, and the credit and business of said Bankers' & Merchants' Telegraph Company, and the market value of the stock and bonds of the latter, and to ruin said firm of A. W. Dimock & Co., and cause the permanent suspension of its business. That the fair market value of

said stocks and bonds so pledged to said bank was, at the time when they were so sold. not less than sixty-three thousand eight hundred dollars, and said firm of A. W. Dimock & Co. were and are entitled to an accounting by said bank for the difference between that sum and the amount of said loan of fifty thousand dollars, while the loss of said firm by reason of the impairment in the manner and by the means aforesaid of the market value of the stock and bonds of said Bankers' & Merchants' Telegraph Company was not less than three million six hundred and eighty-eight thousand three hundred and sixty dollars, and the total loss and damage of said firm caused by the wrongful acts of said defendants was not less than four million dollars. That said wrongful, illegal, and fraudulent agreement, combination. and conspiracy between said defendants and others was wholly unknown to said firm, and to each member thereof, on said 15th day of May, A. D. 1884, and was not discovered by either of them until on or about the 28th day of June, A. D. 1890. That on or about the 4th day of June, A. D. 1891, the said Arthur V. Dimock. by an instrument in writing under seal, and for a valuable and sufficient consideration, duly assigned and transferred all his claim and right of action growing out of the matters hereinbefore set forth to said Anthony W. Dimock, and afterwards, and on the same day, said Anthony W. Dimock. by an instrument in writing under seal, and for valuable consideration, assigned all the claim and right of action then held by him, said Anthony W Dimock, to the plaintiff in this action, who is now the lawful owner and holder thereof. Wherefore the said plaintiff prays that said defendants, and each of them, be required to answer specifically, explicitly, and in detail, all and singular the allegations of this complaint, setting forth the part taken by each of them in each and every of the acts and transactions therein set forth, described or mentioned; that the facts in regard to each and every of said acts and transactions, and the loss and damage sustained by said assignors of the said plaintiff by reason thereof, be inquired of and ascertained by a referee to be appointed by the court, or by such other means as the court may direct; that said United States National Bank be required to account to the plaintiff for the difference between the market value of said stocks and bonds so pledged to it as security for said loan, being the sum of thirteen thousand eight hundred dollars, together with interest thereon from said 15th day of May, A. D. 1884; and that plaintiff have judgment against said defendants for four million dollars, the amount of the loss and damage sustained by said assignors by reason of the wrongful, illegal, and fraudulent acts and doings of said defendants hereinbefore set forth and complained of, with such other relief as may be just and proper in the premises, including the costs of this action."

Argued before VAN BRUNT, P. J., and O'BRIEN and FOLLETT, JJ.

John G. Ritter, (B. C. Chetwood, of counsel,) for appellant.
G. H. Yeaman, for respondent.

VAN BRUNT, P. J.   In view of the extraordinary character of the complaint in this action we do not think that the discretion of the court was abused in granting the motion for a bill of particulars. The order should be affirmed, with $10 costs and disbursements. All concur.